On May 12, 1941, defendant purchased from LaGrone Motors of Jonesboro, Louisiana, a Dodge automobile for the price of $1,475.84, including carrying charges. He paid $860 of this amount in cash and gave his note for the balance of $615.84, payable in 24 monthly installments of $25.66 each, secured by vendor's lien and chattel mortgage on the car. The note was acquired by the plaintiff very soon after its execution. Ten of the installments were paid as they fell due. Defendant was then inducted into the armed forces of the United States. Prior to induction he offered to pay the balance due on the note, less fifty per cent of the carrying charges, which proposition was declined by the plaintiff. However, plaintiff countered with a different proposition which was rejected by defendant with the declaration that he would avail himself of the provisions of the Soldiers' and Sailors' Civil Relief Act of Congress, 50 U.S.C.A. Appendix, § 501 et seq., if foreclosure should be attempted. No additional payments on the note have been made.
When defendant was inducted he left the automobile in the possession of his mother who resides in the village of Clay, in the Parish of Jackson, and since that time until sequestered herein it has been used by her and other members of the family.
The present suit, foreclosure by ordinary process, was instituted on August 6, 1942. Wayne Stovall, an attorney at law at Jonesboro, Louisiana, was appointed curator ad hoc to represent the defendant, who, at the time, was stationed at Waco, Texas.
On September 3rd Mr. Stovall, in his own proper person and as curator ad hoc, filed a motion in which it is averred that the defendant is presently in the armed forces of the United States; that his ability to conduct his defense to the suit or pay the balance of the note is materially affected by reason of his military service and that more than fifty per cent of the purchase price of the car had been paid. He prays "that this proceeding be stayed, postponed and/or suspended and the seizure resulting from the sequestration * * * be set aside." *Page 535 
On December 31st the court, on plaintiff's application, in keeping with the amendment to the Soldiers' and Sailors' Civil Relief Act, adopted October 6, 1942, appointed three appraisers to value the car. They submitted an appraisement on January 12th. The average of their valuation is $585. This average valuation did not take into account the tires and battery which had been removed for safe keeping, but by whom the record is silent. Also, on January 12th trial was had of the motion filed by the curator ad hoc. Judgment was rendered, from which the following is quoted, to-wit: "That all proceedings herein be stayed in accordance with the Soldiers' and Sailors' Civil Relief Act of 1940 as amended and that the writ of sequestration sued out be dissolved, be recalled and sequestration and the application to sell the car be dismissed at plaintiff's cost."
Plaintiff suspensively appealed.
The Soldiers' and Sailors' Civil Relief Act was passed by Congress on October 17, 1940. The laudable purposes intended to be attained and promoted through its adoption are clearly enunciated therein. These constitute Section 510, U.S.C.A.Appendix (Title 50).
This section is followed by several others for the protection against harassment from litigation of soldiers and sailors while in the military service of the Government. To some extent the rules governing one situation are unlike those governing others. Section 532, U.S.C.A.Appendix, being Section 302 of the Act, was designed particularly to govern cases wherein obligations, secured by mortgage, were incurred by an inductee in the purchase of real estate or personal property, save that described in Section 303, prior to the passage of the Act; such as deferred installments represented by purchase price note or notes. Paragraph 2 of this section reads as follows:
"In any proceeding commenced in any court during the period of military service to enforce such obligation arising out of nonpayment of any sum thereunder due or out of any other breach of the terms thereof occurring prior to or during the period of such service the court may, after hearing, in its discretion, on its own motion, and shall, except as provided in section 303 (section 533 of this appendix), on application to it by such person in military service or some person on his behalf, unless in the opinion of the court the ability of the defendant to comply with the terms of the obligation is not materially affected by reason of his military service —
"(a) stay the proceedings as provided in this Act; or
"(b) make such other disposition of the case as may be equitable to conserve the interest of all parties."
Section 533, 50 U.S.C.A.Appendix, being Section 303 of the Act, originally provided, inter alia, that no court should stay a proceeding to resume possession of or to foreclose a purchase price mortgage on a motor vehicle, trailer or accessories of either, "unless the court shall find that 50 per centum or more of the purchase price of said property has been paid," etc. In other words, this section prohibited by foreclosure the enforcement of a mortgage on the affected chattel if fifty per cent or more of the purchase price had been paid. If less than fifty per cent had been paid, no stay order would lie. Evidently the possible mischievous effects of this section were realized by Congress because by amendment adopted October 6, 1942, it was wholly repealed. The section was rewritten and, as adopted, reads as follows: "Where a proceeding to foreclose a mortgage upon or to resume possession of personal property, or to rescind or terminate a contract for the purchase thereof, has been stayed as provided in this Act, the court may, unless in its opinion an undue hardship would result to the dependents of the person in military service, appoint three disinterested parties to appraise the property and, based upon the report of the appraisers, order such sum, if any, as may be just, paid to the person in military service or his dependent, as the case may be, as a condition of foreclosing the mortgage, resuming possession of the property, or rescinding or terminating the contract."
The repeal of the original section and the adoption of the amendment are of obvious significance. It was pursuant to the discretion conferred by the amendment that the lower court appointed appraisers to evaluate the seized automobile, but in disposing of the issues raised by the motion the action of the appraisers was wholly ignored.
There are no written reasons for judgment in the record. It is said in brief of plaintiff's counsel that the court stated the car would depreciate more from being *Page 536 
stored than from use. However, to allow the car to be used while defendant is in the military service of the Government, which doubtless will be co-extensive with the duration of the war, without requiring additional payments thereon, overlooks entirely the interest and rights of plaintiff as assignee of defendant's obligation. Under the facts of the case it seems clear to us that by pursuing the course outlined in the amendment would squarely meet the alternative (b) of Section 532, quoted above, particularly since the court has issued a stay order as to the main demand, that for a personal judgment against the defendant. Surely by having the car with all complementary equipment appraised by competent and disinterested parties and the equity of defendant therein paid as provided by the amendment would be making "such other disposition of the case as may be equitable to conserve the interests of all parties."
The sole restriction upon a court's power to resort to and follow the provisions of the amendment lies in the clause "unless in its opinion an undue hardship would result to the dependents of the person in military service." Defendant's only dependent is his mother, Mrs. Ruth Kavanaugh, whose age is not given. He is twenty-four years old and not married. Prior to induction he earned $175 per month as instructor in the Louisiana Polytechnic Institute at Ruston, Louisiana. His military rank is that of Corporal which pays him $66 per month. His allotment to his mother, plus supplement by the Government, amounts to $42 per month.
What might be "undue hardship" to a dependent is difficult to define. We shall not attempt to do so. In one case to deprive the dependent of the use of a car would amount to "undue hardship" whereas in another case this result would not accrue from such deprivation. The fact that considerable inconvenience would result from being without the use of a car, after having had the use of one, does not necessarily mean that such lack of use amounts to "undue hardship". Each case involving this question must be determined from its own peculiar facts. The testimony of Mrs. Kavanaugh does not convince us that if deprived of the use of the car an "undue hardship" would result. She testified on the question as follows:
"Q. During the time you had the car, you did use the car? A. I used it mostly when I would go to the doctor.
"Q. How much, or what kind of use did you put the car to? A. I hardly ever did use it, only strictly on business, to go to the doctor.
"Q. Do you drive? A. Yes.
"Q. Did anyone other than yourself drive? A. My boy drives also.
"Q. What is his name? A. James.
"Q. Did James use the car for his own pleasure driving? A. He attended to business for me.
"Q. Did he rip around the country? A. Not that I know of; only when I would send him to town after something.
"Q. How old is James? A. 17."
The son, James, to whom referred, is a student in the Louisiana Polytechnic Institute which is some seven miles distant from Clay, but Mrs. Kavanaugh says as a rule he goes to and from school by bus. She owns a home and other property in Clay and also a farm of eighty acres near there.
The facts of this case are very much like those in Associates Discount Corporation v. Armstrong et al., reported in 33 N.Y.S.2d page 36. Therein the defendant claimed the benefits of the Soldiers' and Sailors' Civil Relief Act and the Military Law of the State of New York, Consol. Laws, c. 36, which is quite similar to the Federal statute. In rejecting the pleas advanced by defendant or on his behalf, the court said [page 38]: "A stay of the proceedings herein will work an unnecessary, unexpected and unjustifiable hardship on plaintiff without bringing any benefit to defendant. The term of his present service is indefinite. In the meantime, the automobile is in storage, the expense of which is increasing daily; the car itself is depreciating in value, and the future holds only uncertainty as to the possibility of obtaining materials necessary for repairs or replacements to the car if it should finally be put to use again. Defendant is financially unable to pay the balance due under the contract, or even to make the installment payments called for therein — all without fault on his part. It seems, therefore, that the rights of the parties should be determined in accordance with Section 310, Subdivision 3 — `Or it (the court) may make such other disposition of the case as may be equitable to conserve the interests of all parties.' In my opinion, the interests of all parties will best be served by terminating defendant's liability and by securing *Page 537 
to plaintiff the payment of the unpaid balance due, both of which, fortunately, in this case can be done, since the present value of the car is greater than the unpaid balance due under the contract. In a case as this, the defendant's interest will be conserved by requiring that a fair value be placed upon the car, and that consideration be given to market conditions, age of the car, its condition and salability, and the terms of any purchase-offer which may be made."
It is certain that should the provisions of the 1942 amendment be followed, a substantial equity will accrue and be paid over to defendant or his dependent in addition to relief from the obligation upon which sued.
The curator ad hoc urges as a bar against plaintiff's suit, the fact that defendant's ability to comply with the terms of his obligation to plaintiff has been "materially affected by reason of his military service." This may be conceded to be true if the reduction in monthly income alone be determinative of the question. However, this fact would not have prevented foreclosure of a mortgage on a motor vehicle under original Section 303 if less than fifty per centum of the purchase price thereof had been paid.
We do not think that because the ability of an inductee to discharge his financial obligations promptly is "materially affected by reason of his military service", it should be allowed to operate as a bar against resort to the provisions of the amendment in order to equitably and justly solve financial differences between him and his creditor. The amendment contains only one restriction against a court employing it in a proper case. We have above mentioned and discussed this restriction, and as the amendment is the last expression of Congress on the subject, it has controlling effect over prior laws contrary thereto.
It is not contended, nor does it appear, that defendant has any legal defense to the merits of the suit. Therefore, his military service on that score does not prejudice any right of his. The proposition made by him to plaintiff immediately prior to induction reveals that he felt unconditionally bound on the note.
For the reasons herein assigned, the judgment appealed from insofar as it dissolves the writ of sequestration and dismisses the application for sale of the car is annulled, avoided and reversed; and it is now ordered, adjudged and decreed that this case be and it is hereby remanded to the lower court to be further proceeded with in keeping with the views herein expressed. Costs of appeal are assessed against the defendant.